CIRCUIT COURT FOR CLACKAMAS COUNTY, MARCH TERM, 1868.

W. C. JOHNSON ET AL. *v.* THE CITY COUNCIL OF OREGON CITY.

Intangible property, not growing out of real estate, must be held to follow the person of the owner.

Its locality does not depend upon the place of the written evidence of the ownership. Where one of two co-executors resides in this State, and transacts the business pertaining to the estate, and the other resides abroad, the residence of the former will determine the *situs* of the *choses in action* belonging to the estate.

Notes and other *choses in action* belonging to citizens resident in Oregon City, are liable to taxation under the charter of Oregon City.

*Johnson & McCown,* for the plaintiff.

*S. Huelat & B. Killin,* for the defendant.

The plaintiffs are executors of the last will of W. C. Dement, deceased. J. D. Dement, one of the executors, being a resident of San Francisco, Cal., and the other, W. C. Johnson, residing in Oregon City, in this state; the latter had the personal care and management of the estate.

Some months before the time of the annual city assessment of Oregon City for 1867, the executor Johnson caused notes, mortgages, etc., payable to the executors, theretofore kept by him in Oregon City, to be placed in the hands of an agent residing outside of Oregon City; said Johnson continuing a citizen of, and to reside in, Oregon City, and still retaining power over and control of the notes, and collecting interest on them at Oregon City. The notes, notwithstanding their removal, were assessed by the assessor of Oregon City to the value of $30,000.

W. C. Johnson, as executor, paid the tax under protest, and this action is brought to recover back the amount paid.

UPTON, J., delivered the following opinion:

The charter of Oregon City contains the following provisions: The City Council has power " to levy and collect taxes for general corporation purposes, not to exceed one

half of one per cent. per annum upon all real and personal property *actually* within the corporate limits of said city, made taxable by the law for county and territorial purposes."

The assessor shall make "a correct list of all the real estate within said city, and the *personal estate of all citizens thereo*;" and upon such property is to be levied the taxes spoken of in the charter.

The mode of conducting the assessment and collection the charter 'directs "shall be the same as in assessing and collecting county and territorial taxes."

The State law (Code, p. 898, s. 19,) provides that when any person is assessed as executor, a designation of his representative character shall be added to his name, and he shall be assessed for all personal property held by him in such representative character."

Section 3 (Code, p. 894) provides the terms "personal estate" shall be construed to include "all debts due, or to become due, from solvent debtors, whether on account, contract, note, mortgage or otherwise."

I think the plaintiff Johnson must, for the purposes of this case, be considered as sole executor, or as fully representing and by permission acting for his co-executor in all matters pertaining to the management, control and custody of the property in question. Mr. Dement, while in another State, and making no objection to that control and custody, can no more disclaim the acts of Johnson, or set up a claim of distinct ownership and custody, than if he were not an executor. Co-executors are considered in law as one individual person. The acts of any one of them are deemed the acts of all. (Bacon, Ab. "Executor," D. Com. Dig. "Administration," B. 12.)

I shall, therefore, dismiss all further consideration of that feature of the case, and deal with the questions arising as if Mr. Johnson was sole executor, or as if both instead of one of the executors were resident citizens of Oregon City.

The legal title of the personal property of an estate is in the executor or administrator when reduced to his possession or control, notwithstanding he holds it in trust. And if the State law had been silent on the subject, it would be

properly assessable to such trustee. Beyond what has been alluded to, this case presents no question that would not arise if the property in question had been the individual property of the plaintiff, W. C. Johnson.

It was admitted on the trial that the notes were taken out of the limits of Oregon City for the sole purpose of avoiding the assessment and taxation by that corporation, and the suit was brought for the purpose of testing the question whether the absence of the notes and mortgages, was sufficient to relieve them from liability to the tax.

Debts due to a person are taxable to such person, as a general rule, at the place where he resides, and debts of which there is no written evidence are evidently, by the city charter, made taxable to the citizens resident in Oregon City.

Is a promissory note identical with the debt which is secured by it?

Promissory notes are spoken of in the books as *choses in action*. A debt, the evidence of which is not in writing, is also a *chose in action*. If the paper on which the promise is written, or the written words, are what is meant, when it is said that a promissory note is a *chose in action*, or that a promissory note is personal property, there is reason for the position that removing the paper and the written words from the limits of a city removes the property from the city. And it is said, in support of the position, that the characteristics of a promissory note so indicate. Promissory notes are good in the hands of an innocent purchaser. A delivery of the paper passes the title of the *chose in action;* and for these purposes the paper may be said, at least, to represent and stand for the debt, if it is not in fact identical with it. But does it follow because delivery of the paper transfers the right of action from one person to another, that the paper and the right of action are one and the same thing, or that the place where the note may be, is the place of the indebtedness, or of the property.

The two are not always in the same place or in the control of the same person, for negotiable paper may be fraudulently taken from the owner and yet the debt—the right of

action—may remain in and with the owner. Again, it is not uncommon that duplicate or triplicate papers are made to represent, or to be evidence of, the same indebtedness, and the respective original copies may be in the hands of different persons, each claiming to be the holder and owner of the note and of the property the note represents, and yet that property may be in the original payee, and the evidence not in his possession or control.

The paper alone is not sufficient to constitute property. The paper may be of itself, and is, *prima facie* evidence of the existence of property. But if the paper is ever so perfect as a writing, it may have been made or obtained under such circumstances that there is no property in the thing it purports to represent. If the facts exist which the note declares, a cause of action exists—the property exists.

If the promise for a valuable consideration has been made, the property called the debt or indebtedness exists, whether the promise is reduced to writing or not. Making the note creates evidence, but the indebtedness may exist either with or without that kind of evidence.

The making of the note renders certain rules of evidence applicable to the transaction, that would not otherwise apply to the contract, and casts upon each of the original parties to the note new rights or liabilities under certain contingencies that may or may not happen. But there is nothing in the subject thus abstractly considered that would justly lead us to the conclusion, that the owner of an indebtedness, evidenced by a promissory note, can change the location of his property by changing the location of the evidence of that indebtedness, any more than the owner of a demand resting upon the evidence of a single witness can change the place of his property by changing the place of the witness. In the case of contracts not negotiable by delivery, it will hardly be contended, that to carry the written contract across the state line would remove the *chose in action* from one State to the other.

Intangible property not growing out of real estate must be held to follow the person of the owner. Instead of depending on the whereabouts of the evidence of the owner-

ship, the locality of this class of property must, in general, depend upon the locality of him whose personal property it is.

Had the plaintiffs delivered these notes upon a sale thereof, of course the plaintiffs' property therein would have been divested, and if removed to another town or state with the buyer, of course the location of the property would have been changed.

Or had the plaintiffs taken them out of Oregon City and pledged them in security for money, the plaintiffs would thereby have ceased to have the absolute property, and possibly the place of the property might thus be changed, but here no such question arises.

The framers of the charter seem to have understood the law of this subject in the light above set forth.

The charter makes no provision for assessing notes or other evidences of indebtedness, not the property of citizens of Oregon City, that might be actually in the city. It uses the words, "and the personal estate of all citizens thereof."

An assessment so made could not include such notes or other evidences of indebtedness not the property of the citizens. The indebtedness represented by notes so held would not be *actually* in the city, and, as a consequence, would not be embraced in the provision first quoted. There are reasons for excluding the tangible property of the citizens held and used elsewhere, as is done by the words "actually within the corporate limits," that do not apply to *choses in action;* 1st, because the use and advantages of such property are not likely to be enhanced or benefited by the municipal expenditures, and 2d, because the same property may be subject to similar taxes elsewhere.

I think it clear that the property in question was, because of its nature and the place of its ownership, actually in Oregon City and liable to be taxed there.

If it were doubtful, there is a reason, applicable to doubtful cases, that would be of much force in favor of this position—that is, the contrary rule would be in the highest degree impolitic. It would hold out strong inducements

to citizens to send their evidence of indebtedness out of the city and thereby avoid their due share of the public burdens. By doing this secretly, they might avoid local taxes at the place of deposit and thus escape entirely, while other citizens would have increased taxes. Possibly a still greater evil would arise under that state of the law, by rendering it impossible to ascertain the whereabouts of this kind of property, or to determine for what property citizens were liable to be assessed.

If the citizen, under this temptation, was induced to undertake to avoid taxation, it would be next to impossible to ascertain whether or not he had such papers actually within the city; and if they were absent, it would be difficult for assessors of other municipalities to learn where they were deposited, either for their assessment or for the purpose of punishing illegal evasion of the laws relating to State and county taxes.

The complaint should be dismissed.[1]